IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. MORSE JR. MARITAL TRUST,

                                 Case No.: 1:25-cv-00364

       Plaintiff,                  Hon. Robert J. Jonker

v

EVP HOLDINGS, LLC, a Michigan limited
liability company, EGC Enterprises, LLC,
a Michigan limited liability company, MATTHEW
LAVENDER, and CRAIG FLOCKEN, jointly and
severally,

       Defendants.

_____

| | |
|---|---|
| Smith Haughey Rice & Roegge | Stevenson & Bullock, P.L.C. |
| Christopher S. Berry (P68580) | Charles D. Bullock (P55550) |
| Kevin B. Even (P38599) | Court Appointed Receiver |
| Attorneys for Plaintiff | John W. Polderman (P65720) |
| 100 Monroe Center St. NW | 26100 American Drive, Suite 500 |
| Grand Rapids, MI 49503 | Southfield, MI 48034 |
| 616-774-8000 | (248) 354-7906 |
| cberry@shrr.com | cbullock@sbplclaw.com |
| keven@shrr.com | jpolderman@sbplclaw.com |

_____

## NOTICE OF RECEIVERSHIP AND STAY OF LITIGATION

All parties are hereby notified that on July 22, 2024, an Order Regarding Plaintiff's

Renewed Motion for Appointment of Receiver (the "Receivership Order") was entered by Judge

Brian K. Kirkham in the State of Michigan Circuit Court for the County of Calhoun (Case No.

2024-1304-CB) *Peloris Fund Reit, LLC v. Evolutions Holdings, LLC et al.).*  Pursuant to the

Receivership Order, Charles D. Bullock of Stevenson & Bullock, P.L.C. was appointed as the

Receiver over all Receivership Property (as defined therein) of Defendant EGC Enterprises,

LLC, *See* <u>Receivership Order</u> attached as **Exhibit A.** In accordance with the Receivership

Order, all proceedings against Defendant, EGC Enterprises, LLC are stayed.[1] Id. at ¶ 18.

          Respectfully submitted,

          **STEVENSON AND BULLOCK, PLC**

          */s/ John W. Polderman*
          John W. Polderman (P65720)
          Attorney for Court Appointed Receiver

Dated: April 23, 2025

---

[1] Nothing contained herein shall be deemed a waiver of any claims, defenses, or rights of the Defendants and/or the Receiver.

# Exhibit A

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF CALHOUN

PELORUS FUND REIT, LLC, a Delaware
limited liability company,

Court File No.: 2024-1304-CB

      Plaintiff,

Hon. Brian K. Kirkham

v

EVOLUTIONS HOLDING, LLC, a Michigan
limited liability company; EGC
ENTERPRISES, LLC, a Michigan limited
liability company; GREEN FLAKE FARMS,
LLC, a Michigan limited liability company;
CRAIG FLOCKEN, an individual; and
MATTHEW LAVENDER, an individual,

      Defendants

---

| | |
|---|---|
| Benjamin Sobczak (P73567) | Ronald W. Ryan (P46590) |
| Kaitlyn Elias (P82957) | Lana M. Escamilla (P75125) |
| DICKINSON WRIGHT PLLC | LEWIS, REED & ALLEN, P.C. |
| 2600 W. Big Beaver Rd., Suite 300 | 136 E. Michigan Avenue, Suite 800 |
| Troy, MI 48084 | Kalamazoo, MI 49007 |
| (248) 631-2014 | (269) 388-7600 |
| BSobczak@dickinson-wright.com | rryan@lewisreedallen.com |
| KElias@dickinson-wright.com | lescamilla@lewisreedallen.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants/Counter-Plaintiff* |

---

## ORDER REGARDING PLAINTIFF'S
## <u>RENEWED MOTION FOR APPOINTMENT OF RECEIVER</u>

At a session of said Court held in the City of Battle Creek,

County of Calhoun, State of Michigan on _____.

PRESENT: HONORABLE _____

                              CIRCUIT COURT JUDGE

**WHEREAS,** on April 30, 2024, Plaintiff Pelorus Fund REIT, LLC ("Pelorus" or "Plaintiff") filed an Emergency *Ex Parte* Motion for Appointment of Receiver and Plaintiff's Verified Complaint in support thereof;

**WHEREAS,** on May 21, 2024, this Court entered its Order Regarding Plaintiff's Emergency *Ex Parte* Motion for Appointment of Receiver ("Order") whereby this Court reserved its ruling on the appointment of a receiver, and ordered Defendants Evolutions Holding, LLC ("Evolutions"), EGC Enterprises, LLC ("EGC"), Green Flake Farms, LLC ("Green Flake"), Craig Flocken ("Flocken"), and Matthew Lavender ("Lavender" and collectively with Evolution, EGC, Green Flake and Flocken, "Defendants") to, among other things, bring current all outstanding regularly scheduled interest payments under the Construction Loan and Security Agreement equal to $1,267,580 ("Lump Sum Interest Payment") through the payment of certified funds to Plaintiff on or before June 12, 2024 at 3:00 p.m. ("Interest Deadline");

**WHEREAS,** the Order provided for Plaintiff to renew the Emergency *Ex Parte* Motion for Appointment of Receiver for this Court's consideration of the appointment of a receiver in the event Defendants failed to make the Lump Sum Interest Payment by the Interest Deadline;

**WHEREAS,** Defendants failed to make the Lump Sum Interest Payment by the Interest Deadline;

**WHEREAS,** on June 21, 2024, Plaintiff filed its Renewed Motion for Appointment of Receiver ("Motion") and Plaintiff's First Amended Complaint ("FAC") in support thereof;

**WHEREAS,** on July 1, 2024, this Court held the hearing on Plaintiff's Motion;

**WHEREAS,** on July 22, 2024, this Court held a hearing, pursuant to MCR 2.602(B)(3) and MCR 2.622(B)(4-5), concerning Defendants' objections to Plaintiff's proposed order relative to the Court's bench ruling made during the July 1, 2024 hearing; and

**WHEREAS**, this Court being otherwise fully advised in the premises, orders as follows:

**IT IS HEREBY ORDERED** that this Court has found good cause for entry of this Order and has determined that the appointment of the Receiver (as defined below) is just and appropriate under the circumstances and has determined that the Receiver's authority and duties as set forth herein are both just and appropriate;

**IT IS FURTHER ORDERED** the Court finds that the grounds set forth in MCL 600.2926, MCL 554.1016 and MCR 2.622 are satisfied for appointment of the Receiver, and that it has jurisdiction over this matter pursuant to, *inter alia*, MCL 600.2926;

**IT IS FURTHER ORDERED** that

1. The Motion is granted as provided herein.

2. The time for responding to all unanswered pleadings, including Plaintiff's response to Evolutions' Amended Counterclaims and Defendants' response to Plaintiff's FAC, is extended by twenty-eight (28) days from the date of entry of this Order.

3 All pending motions and hearings on such motions, including Defendants' Motion for Summary Disposition Pursuant to MCR 2.116(C)(7) ("Arbitration Motion"), are stayed for twenty-eight (28) days from the date of entry of this Order, after which time Defendants may issue a re-notice for hearing on the Arbitration Motion.

4. Notwithstanding anything to the contrary contained herein, the case currently pending before the 37th Circuit Court, styled *Evolution Holdings LLC v. Howland* (Case No. 2023-149-CH) (the "Quiet Title Action") shall not be subject to the automatic stay imposed by Paragraph 18 hereof, but shall instead proceed pursuant to its current schedule as established through those separate proceedings.

3

5. Effective and commencing immediately upon the entry of this Order, Charles D. Bullock (P55550) and his firm, Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MIC 48034 (the "Receiver"), pursuant to, *inter alia*, MCL 600.2926 and MCR 2.622, is hereby appointed as Receiver over Evolutions, EGC, and Green Flake (individually and collectively, the "Entities"), with full powers as receiver of all of the Entities' equity, assets and property, real, personal or mixed, tangible and intangible, wherever situated, and all proceeds therefrom, including but not limited to the Property[1] and the Collateral, as defined below (collectively, the "Receivership Estate"). Pursuant to MCR 2.622(D)(1), the Receiver shall file an acceptance of the Receivership within 7 days after entry of this Order and shall otherwise comply with all requirements of MCR 2.622(D).

6. The Receiver is further authorized to exercise all powers and authority generally available under the laws of the State of Michigan that may be incidental to the powers described in this Order and reasonably necessary to accomplish the purpose of this Receivership. The Receiver shall have such additional powers that may be provided by law and that the Court may from time to time direct or confer.

7. Without limiting the foregoing, the Receiver shall have the power to employ and/or contract with professionals and others, including but not limited to counsel, financial advisors, accountants, brokers, assistants, agents, private investigators, consultants, advisors, realty professionals, and other third-parties (collectively, the "Professionals") as he deems necessary to carry out his duties. The Receiver may pay any and all of the Professionals from the Receivership Estate.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the FAC.

4

8    Plaintiff and Defendants shall cooperate with the Receiver and shall make available to the Receiver for inspection and copying all of their records concerning the Receivership Estate, as shall be necessary for the Receiver to fulfill his duties under the terms of this Order  Further, Plaintiff and Defendants, and their agents and employees, shall fully cooperate with the Receiver at all times during the pendency of the receivership.

## BASIS FOR AND PURPOSE OF RECEIVERSHIP

9.    Pursuant to MCR 2.622(A), the Court finds there is good cause for the appointment of a receiver in this matter for the following reasons:

a. This action involves the collection of substantial indebtedness due and owing to Pelorus from Defendants (with Evolutions as the "Borrower" and EGC, Green Flake, Lavender and Flocken, the "Guarantors"), relating to a secured, cross-collateralized, and cross-defaulted loan with an alleged, but yet conclusively proven, outstanding balance of $10,260,299.81 as of June 21, 2024, plus continuing interest, costs, taxes, attorney fees, late and other charges, which continue to accrue daily, as alleged by Pelorus.

b. Pelorus holds a secured claim against Evolutions in the alleged principal amount of $10,260,299.81 as of June 21, 2024, together with interest which Pelorus alleges to have accrued, and will continue to accrue, thereon, and in addition to all other attorney fees, costs, and other present and future obligations which may be due or may become due under the loan documents (collectively, the "Indebtedness").

c. The Indebtedness is secured by the terms and provisions contained within the First Amendment,[2] where Defendants granted Pelorus a security interest in the Collateral, as described in the Motion. Pelorus' first priority right to the Collateral is shown by the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the FAC.

Mortgage (Construction) dated March 1, 2021, as amended and restated on August 9, 2022 and recorded in the Office of the Calhoun County Register of Deeds, granting a lien on the Property and all assets related or incidental thereto (the "Mortgage," attached to the FAC as **Exhibit 15**), as well as the UCC Financing Statements executed by the Defendants granting a lien in favor of Pelorus on all assets of the Defendants and filed with the Michigan Department of State (the "UCCs," attached to the FAC as **Exhibits 11 & 16**), among other documents.

d. Defendants have repeatedly defaulted on their obligations to Pelorus concerning repayment of the Indebtedness.

e. Pursuant to the Loan Documents, Evolutions and the Guarantors consented to appointment of a receiver in the event of default.

f. Appointment of a receiver is otherwise proper pursuant to MCL 600.2926 and MCL 544.1016 under the circumstances described above in order to take control over the Receivership Estate, stay the Quiet Title Action and any other litigation related to the Receivership Estate, preserve and prevent dissipation of assets, prevent further waste, maximize Evolutions', EGC's, and Green Flake's remaining value, allow for the orderly disposition of the Receivership Estate, and give proper recognition to Pelorus' rights under the Loan Documents.

**DESCRIPTION OF RECEIVERSHIP ESTATE**

10. Pursuant to MCR 2.622(C)(2), the Receivership Estate includes the "Collateral", as defined in the Motion pursuant to the Loan Agreement, as "the Property and any other Real Property or Personal Property, now or hereafter acquired, of [Evolutions] or any other [Defendant]

in or upon which a Lien is granted, or as to which an assignment for security purposes is made, in favor of Lender to secure the Obligations." (See FAC, Ex. 12A, §1.01).

11. For the avoidance of doubt, the Receivership Estate includes, but is not limited to:

   a. The Property, located at 1060 River Rd. West, 1062 River Rd West, and 1064 River Rd. West, Battle Creek, Michigan.

   b. Lavender's Equity Interest in Evolutions, as well as Flocken's Equity Interest in EGC and Equity Interest in Green Flake. The Receiver's assuming control of the Entities and their regulated activities is specifically authorized by the administrative rules governing the Licenses and EGC's participation in Michigan's licensed marijuana industry, generally. See Admin Rule 420 14(8)

**NOMINATION AND QUALIFICATIONS OF RECEIVER**

12. Pursuant to MCR 2.622(B)(1), Pelorus has nominated Charles Bullock and his firm, Stevenson & Bullock, P.L.C., (the "Receiver") to act as receiver to the Receivership Estate and has demonstrated to the Court's satisfaction that the Receiver has sufficient competence, qualifications, and experiences to administer the Receivership Estate, considering the factors set forth in MCR 2.622(B)(5). A summary of the Receiver's relevant experience is attached to the Motion as **Exhibit 9**.

13. Pelorus has further demonstrated to the Court's satisfaction that the Receiver is independent, not conflicted, and not otherwise disqualified from serving as a receiver in this matter pursuant to MCR 2.622(B)(6). *Id.*

**POWERS OF THE RECEIVER**

14. The Receiver is authorized and directed to take immediate possession and full control over the Receivership Estate, and to take such further actions as the Receiver deems

7

reasonable and appropriate to prevent waste, and to preserve, manage, secure and safeguard the Receivership Estate and maximize the value of the Receivership Estate. The Receiver, in the exercise of his business judgment, shall be empowered but not obligated to:

a. Preserve, hold, and manage the Receivership Estate, and perform all acts necessary to preserve its value, to prevent any loss, damage, or injury;

b. Prevent the withdrawal or misapplication of funds;

c. Sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including electronically stored information and other papers of the Entities;

d. Initiate, petition, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings, in any court of competent jurisdiction, including state and federal, or foreign court(s) necessary to preserve the Receivership Estate or to carry out his duties pursuant to this Order;

e. Issue subpoenas to obtain documents and records pertaining to the receivership and conduct discovery in this action on behalf of the Receiver; and

f. Open one or more bank accounts as designated depositories for funds of the Entities. The Receiver may deposit all funds of the Entities in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts.

15. The Receiver is authorized to exercise any and all powers set forth in MCR 2.622(E). Without limiting the foregoing, the Receiver is authorized, without further Court Order:

a. To maintain, secure, manage, operate, repair and preserve the Receivership Estate, directly or through unrelated agent(s) contracted for that purpose;

b. To assume control over the Receivership Estate and to collect and receive all cash, cash on hand, checks, cash equivalents, credit card receipts, current and past due earnings, revenues, rent, issues and profits, accounts or accounts receivable (all whether unpaid, accrued, due or to become due), all other cash collateral (all whether now existing or later arising), all claims to rent, negotiate any insurance claims either in progress or to be filed, issues, profits, income, lease termination or rejection claims, to take possession of all accounts held at all banks, brokerage firms, and other financial institutions (collectively, the "Financial Institutions") belonging to the Entities or otherwise holding any portion of the Receivership Estate, whether such funds are in accounts titled in the Entities' name(s) or otherwise, and all other gross income derived with respect to the Receivership Estate or business operations of the Receivership Estate (collectively, the "Income");

c. To sign as Receiver, on behalf of the Company, any checks, bank accounts, drafts, stocks, bonds, vehicle titles, or other instruments of title and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Entities;;

d. To pay any real estate taxes as funds are available and any other taxes or assessments against the Receivership Estate which the Receiver deems appropriate and necessary for preservation of the Receivership Estate; and, to contest, protest or appeal any tax or assessment pertaining to the Receivership

9

Estate. (Any refund or reimbursement of taxes paid shall be deemed 'Income' to be applied as provided below);

e. To oversee the operation and management of the business of the Entities, including the wind-down of the Entities and/or the efforts to market and sell the Entities' assets as a going concern to maximize value;

f. To operate, control, and manage, any and all entities to which the Entities have a controlling or majority interest;

g To exercise all rights reserved or granted to the Entities under any mortgage, other contract, or under Michigan law or Federal law; and

h. To reject any unexpired contracts, agreements, or leases of the Entities that are burdensome on the Receivership Estate, and/or which the Receiver believes are not in the best interest of the Receivership Estate;

i. To execute, cancel, abrogate, renegotiate or modify any/and all existing vendor, supply, maintenance, lease, management, and/or other agreements and contracts related to the Receivership Estate;

j. To investigate any previous transfer or financial transactions relating to the Entities or the Receivership Estate to determine whether any such transactions were potentially fraudulent and/or avoidable under applicable law. The Receiver is also authorized to pursue recovery of any such fraudulent transfers or avoidable transactions in accordance with applicable law.

k. To open a new bank account on behalf of the Entities in order to control all cash revenue disbursements of the Entities, into which the Receiver shall deposit any

10

cash which may currently be held in the Entities' existing accounts, and to make all payments and disbursements from the new bank account;

l   To: (i) issue subpoenas to obtain documents and records pertaining to the Receivership Estate, the Entities, and/or any of the Defendants; (ii) conduct discovery in this action; (iii) open one or more bank accounts as designated depositories for Receivership Estate; (iv) deposit any portion of Receivership Estate in the designated accounts, and (v) make all payments and disbursements from the accounts.

m   To defend, institute, and prosecute suits or summary proceedings related to the Receivership Estate and/or the Entities with respect to the duties imposed on the Receiver by this Order and/or applicable law;

n.   To evaluate Defendants' current litigation posture in the subject action and the Quite Title Action, and to continue litigating, resolve or dismiss any claims or defenses asserted therein to the extent the Receiver believes doing so is in the best interest of the Receivership Estate, and its creditors and shareholders, collectively;

o.   To review any/and all existing vendor, supply, maintenance, lease, management, and/or other agreements and contracts related to the Receivership Estate, and to determine which, if any, Receiver will assume;

p.   To enforce any valid covenant of any contract and/or other agreement related to the Receivership Estate;

11

q. To negotiate and execute any/and all new vendor, supply, maintenance, lease, management, and/ or other agreements and contracts related to the Receivership Estate;

r. For the Receivership Estate which is not covered by insurance under any applicable mortgage, to determine that the property is adequately insured or to procure insurance if funds are available for that purpose. The insurance companies shall accept a copy of this order and add the Receiver as an Additional Insured to all such policies that cover any of the Receivership Estate;

s. Investigate the amount owed, historical payment information, escrow account balances and insurance coverage, obtain payoff statements and extent of any liens on the Receivership Estate as of the date of creation of the receivership estate by entry of this Order; and, to pay lien claimants as reasonably necessary for the release of any part of the Receivership Estate, or to facilitate a sale of any part of the Receivership Estate;

t. To change any and all locks to the Receivership Estate and, if appropriate, limit access to some or all of the Receivership Estate; and

u. To exercise all powers and authority generally available under applicable law that may be incidental to the powers described in this Order or reasonably necessary to accomplish the purpose of the Receivership, provided that the exercise of such power and authority and any actions taken by the Receiver shall be done in good faith and in accordance with all applicable laws; and

12

v. To apply to the Court on motion for amendments to this Order or for such further directions or powers as the Receiver may reasonably deem necessary to carry out the purpose of maximizing the value of the Receivership Estate.

16. Pursuant to further Order(s) of the Court, the Receiver is additionally authorized:

a. To sign as Receiver, on behalf of the Entities, any listing agreements, offers to purchase, deeds, closing documents, instruments of title, bills of sale or other documents necessary to effectuate the sale of any of the Receivership Estate, if such sale is deemed necessary and appropriate, and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Entities;

b. To sell and/or liquidate the Receivership Estate, outside the ordinary course of business, free and clear of liens, in any order or manner the Receiver deems advisable, and to distribute the proceeds therefrom to discharge mortgages, current real property or personal property taxes, to acquire and pay for title insurance, to retain and pay commissions for real estate brokers, all of which shall be paid prior to the Receiver taking any compensation as provided for herein. Prior to selling any part of the Receivership Estate outside the ordinary course of business, the Receiver first shall obtain an order from the Court approving the sale; and

c. To market, sell or otherwise dispose of some or all of the Receivership Estate free and clear of all liens, claims, encumbrances and interests (with such liens, claims, encumbrances and interests to transfer to the proceeds of sale), including, without limitation, by surrendering possession of some or all of the

Receivership Estate to Plaintiff; provided that any sale of the Receivership Estate shall be subject to Plaintiff's prior written consent and that Plaintiff is authorized to credit bid up to the full amount of the Indebtedness.

17. The authority granted to the Receiver is self-executing, unless the action requires approval by this Court. Unless the action requires approval by this Court, the Receiver is authorized to act on behalf of the Entities and the Receivership Estate with respect to the Receivership Estate or in the Receiver's name without further order of this Court and without personal recourse against the Receiver.

## STAY AND INJUNCTIVE PROVISIONS

18. This Order operates as a stay (the "Stay") of (a) the commencement or continuation of any action, including but not limited to, the issuance or employment of process of a judicial, administrative, or other action or proceeding which would in any way transfer title to, encumber title to, or operate as a lien against the Receivership Estate or to recover upon a claim against the Entities via execution against or levy upon the Receivership Estate wherever located; (b) the enforcement against the Receivership Estate of any judgment obtained before the date of this Order; (c) any act to obtain possession of the Receivership Estate or to exercise control of the Receivership Estate, including but not limited to judgment debtor examinations, garnishments and orders to seize property; (d) any act to create, perfect, or enforce any lien against the Receivership Estate; (e) create, perfect, or enforce against the Receivership Estate any lien to the extent that such lien secures a claim that arose before the date of this Order; and/or (f) any act of interference with the Receiver's management and control of the Receivership Estate.

14

19. Notwithstanding anything to the contrary above, pursuant to MCL 554.1024(4)(a), this Order shall not prohibit or restrict Pelorus from foreclosing or otherwise enforcing its security interest and/or liens in or upon any Collateral as otherwise allowed under applicable law.

20. All Financial Institutions are directed to unfreeze (to the extent previously frozen) any accounts belonging to the Entities or otherwise holding the Receivership Estate, whether such funds are in accounts titled in the Entities' name(s) or otherwise, and to immediately transfer all such funds to the Receiver. All Financial Institutions are further ordered to stay, cease, and otherwise forgo transferring any funds to any other person other than the Receiver except as authorized by the Receiver or upon further order of this Court. All Financial Institutions are further ordered to provide the Receiver with such records as the Receiver may request with respect to such accounts. The Receiver may indemnify the Financial Institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver shall have the right to give instructions, notices or directions to the Financial Institutions with respect to the transfer and deposit of funds as necessary for the operation, maintenance and preservation of the Receivership Estate. Any savings, bank, or similar institutions receiving a copy of this Order shall accept the signature of the Receiver to withdraw any and all funds the Entities have the right to withdraw from said Financial Institution with the same legal effect as had an authorized individual signing the same on behalf of the Entities.

21. Pending further order of this Court, any financial or brokerage institution, business entity, or person, that holds, controls, or maintains custody of any account or asset, or at any time has held, controlled, managed or maintained custody of any account or asset owned by, in the name or for the benefit of the Entities, shall:

15

a. Prohibit the Defendants and all other persons other than the Receiver and his authorized agents from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such asset except as directed by the Receiver;

b. Deny the Defendants and all other persons other than the Receiver and his authorized agents access to any safe deposit box that titled in the name of the Entities either individually or jointly with another person or entity or in which any of the Receivership Estate is located; and

c. Provide the Receiver, within five (5) business days of receiving a copy of this Order, a statement setting forth:

   i. The identification number of each and every account or asset titled in the name, individually or jointly, of or held on behalf of, or for the benefit of the Entities;

   ii. The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

   iii. The identification of any safe deposit box that is either titled in the name of the Entities or jointly with, another person or entity or is otherwise subject to access by the Entities; and

16

iv. Upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

22. Defendants are required to fully cooperate with the Receiver to provide the Receiver the access necessary to operate and manage the Entities and control any portion of the Receivership Estate that may be located at any of the Entities' places of business, including but not limited to 1060 River Rd. West, 1062 River Rd. West, and 1064 River Rd. West, Battle Creek, Michigan.

23. Defendants, their agents, officers, managers, representatives, employees, affiliates, parents and subsidiaries, and their respective employees, are ordered to immediately surrender the Receivership Estate to the Receiver and to immediately and fully cooperate in transition of the management of the Receivership Estate to the Receiver, including but not limited to immediately surrendering to the Receiver accurate and complete information and items pertaining to the Receivership Estate, including but not limited to:

   a. A current aged account receivable/delinquency report.

   b. An aged listing of all trade payables and other payables.

   c. A list of operating expenses for the Entities for the past two years.

   d. Year-end 2021 operating statements, year-end 2022 operating statements, year-end 2023 operating statements, and year to-date 2024 operating statements.

   e. All on-site employee payroll records and employee files and applications.

17

f. An inventory of all equipment, furniture, vehicles and supplies.

g. All existing contracts

h. All pending bids for contracts.

i. All insurance policies for the Receivership Estate and/or the Entities.

j. All information regarding all insurance claims submitted in the past three (3) years.

k All documents identifying and summarizing all pending litigation (excluding this action).

l. All keys, documents, books, records and computer files, computer equipment, software, access codes, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, e-mail account maintained at the on-site management office(s) (and all off-site financial records).

m. Any and all other records pertaining to the management of the Entities as may be requested by the Receiver.

24. Defendants, their agents and affiliates, and, unless otherwise stated therein, all creditors or any other person or entity claiming interest in or to any of the Receivership Estate, and all those having claims against the Receivership Estate or the Entities who receive notice of this Order, are hereby enjoined, and shall not:

a. Commit or permit any waste of the Receivership Estate, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Estate;

b. Demand, collect, receive, discount, or in any other way divert or use any of the Receivership Estate or any proceeds from the Receivership Estate;

c    Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation or management of the Receivership Estate and the Entities;

d.    Expend, disburse, transfer, assign, sell, convey, seize, attach, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Estate including, but not limited to, the income derived therefrom;

e.    Do any act that will, or that may tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Estate, including the income derived therefrom, or the preservation of Plaintiff's interest in the Receivership Estate and the income derived therefrom; or

f.    Institute any new, or continue any pending, legal action or process against the Receiver, the Receivership Estate and/or the Entities (with the exception of Plaintiff, who may continue this case for the purposes of maintaining the receivership over the Entities, exercising rights provided in the Loan Documents, and/or seeking judgment against the Defendants related to their respective guarantees of the Indebtedness).

**PAYMENT AND PROTECTIONS OF RECEIVER, REPORTING, AND OTHER GENERAL PROVISIONS**

25.    The Receiver and his Professionals shall receive compensation for their services, payable from the Receivership Estate at their prevailing rates, which range from $100.00 per hour to $470.00 per hour, notwithstanding any statutory presumption. The Receiver and his Professionals shall also be entitled to be reimbursed for out-of-pocket expenses related to the performance of their duties. The compensation and reimbursed expenses shall be an administrative

claim against the Receivership Estate and entitled to priority over any and all secured, priority, and unsecured claims. The Receiver and his Professionals shall issue invoices to the parties to this action, through their respective counsel (as applicable), on a monthly basis. The Receiver and his Professionals may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Court and served upon the Receiver, his Professionals, and all other parties in interest within five (5) days after such invoices are sent by electronic mail to all parties' counsel of record. In the event that an objection is timely filed with the Court and serve upon the Receiver, Professionals, and all other parties in interest, the objecting party shall file a motion with this Court requesting that this Court determine the propriety of the fees sought. In the event that the objecting party fails to file a motion with the Court within five (5) days after objecting to the requested fees or expenses, its objections are waived. In the objection and the motion, the objecting party shall articulate with specificity which time or expense entries are objectionable and the reason for the objection. In the event that a motion is timely filed, the Receiver is authorized to pay himself and his Professionals those fees and expenses to which no objection has been raised. The Receiver and his Professionals shall be paid from the Receivership Estate; however, the Court may determine at a later date that such administrative expenses may be borne by Plaintiffs, Defendants, or split.

26.    Neither the Receiver nor his Professionals shall be liable for any claim, objection, liability, action, cause of action, cost, or expense of the Plaintiff, Defendants, Entities, or Receivership Estate arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of the Entities, and any liability to which the Entities are currently or may ultimately be exposed to under any applicable

laws pertaining to the ownership, use, or operation of the Receivership Estate (collectively, the foregoing are referred to as the "Pre-Receivership Liabilities").

27. The Receiver is to have no personal liability in connection with any liabilities, obligations, liens, or amounts owed to any creditors of the Entities or any Defendant as a result of his duties as Receiver, or with respect to any of the Receiver's duties hereunder, and the Receiver shall not be deemed an owner or operator under any statute establishing environmental liability. The Receiver and the Receiver's employees, agents, and attorneys shall have no personal liability or obligation and shall have no claim asserted against them in connection with the Receiver's duties under this Order for all actions taken in good faith in reliance upon the terms of this Order. All contracts executed by the Receiver shall indicate that he is acting solely in his capacity as Receiver of the Entities.

28. The Receiver shall file periodic reports with the Court, no less than quarterly, with respect to the discharge of his duties as Receiver, including descriptions and status of all attempts to market and/or sell the Receivership Estate and descriptions and status of any financing arrangements between the Plaintiff and the Receiver. The Receiver will allow Plaintiff and Defendants, and their respective agents, at reasonable times to examine and inspect the Receivership Estate and the Receiver's books and records. The Receiver shall submit his final accounting for approval by this Court within 30 days following the termination of the Receivership. Upon approval of the final accounting, the Receiver shall be discharged from office. The Receiver may at any time file a motion requesting that it be exonerated, discharged, and released from its appointment as receiver. A copy of the motion and accompanying notice of hearing must be served on all parties appearing in this action. The Receiver and its employees, agents, attorneys, contractors, and representatives shall incur no liability to any Defendant or any

third party for actions taken during the pendency of the Receivership established by this Order except for any liability resulting from the Receiver's gross negligence, intentional misconduct, or willful and material violation of any Order entered by this Court in this civil action or in any related action.

29. The Receiver may be removed for good cause shown by order entered by this Court on the filing of a motion by any party to this action seeking such relief and after a hearing is held on the motion. If the Receiver is removed, a successor receiver may be appointed by this Court on the request of Plaintiff. By no later than 30 calendar days following the removal of the Receiver pursuant to an Order entered by this Court, the Receiver shall submit a final accounting for approval by this Court and serve it on the parties. On the approval of the final accounting, the Receiver may be discharged from any further duties and responsibilities under this Order.

30. The Receivership established by this Order may be terminated by the entry of an order by this Court on the filing and service by Plaintiff of a motion requesting termination and after a hearing is held on the motion after prior written notice is served on all parties appearing in this action.

31. Notwithstanding any other provision of this Order, Plaintiff shall maintain all of its rights and remedies under the Loan Documents and applicable law, including the right to foreclose on any or all of Plaintiff's Collateral.

32. This Order binds all Defendants, their agents, officers, managers, representatives, employees, affiliates, parents, subsidiaries, and their respective employees, and all creditors of any of the Entities, and any other person or entity claiming an interest in or to the Receivership Estate.

33. This is a final order as to Count VI of Plaintiff's FAC requesting appointment of a receiver.

22

This Order does NOT close the case.

**IT IS SO ORDERED.**

_____ 07/22/2024
CIRCUIT COURT JUDGE

Dated: July _____, 2024

## ACCEPTANCE OF RECEIVERSHIP

I accept the duties of the Receiver as set forth in this Order.

_____

Dated: _____